UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| STEPHEN BUSHANSKY,<br><br>Plaintiff,<br><br>vs.<br><br>ORTHO CLINICAL DIAGNOSTICS HOLDINGS PLC, CHRISTOPHER M. SMITH, KAREN H. BECHTEL, EVELYN DILSAVER, ALLAN HOLT, CARL HULL, RON LABRUM, THOMAS MAC MAHON, DAVID PEREZ, ROBERT R. SCHMIDT, STEPHEN H. WISE, and ROBERT YATES,<br><br>Defendants. | Case No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Stephen Bushansky ("Plaintiff"), upon information and belief, including an examination and inquiry conducted by and through his counsel, except as to those allegations pertaining to Plaintiff, which are alleged upon personal belief, alleges the following for his Complaint:

**NATURE AND SUMMARY OF THE ACTION**

1. This is an action brought by Plaintiff against Ortho Clinical Diagnostics Holdings plc ("Ortho" or the "Company") and the members of Ortho's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C. §§ 78n(a), 78t(a), and U.S. Securities and Exchange Commission ("SEC") Rule 14a-9, 17 C.F.R. § 240.14a-9, and to enjoin the vote on a proposed transaction between Ortho, Quidel Corporation ("Quidel"), Coronado Topco, Inc. ("Topco"), Orca Holdco, Inc. ("U.S. Holdco Sub"), Laguna Merger Sub, Inc. ("U.S. Merger Sub"), and Orca Holdco 2, Inc. ("U.S. Holdco Sub 2"), pursuant to which Ortho will be acquired by

Quidel and the combined company will continue to operate through Topco (the "Proposed Transaction").

2. On December 23, 2021, Ortho and Quidel issued a joint press release announcing that they had entered into a Business Combination Agreement dated December 22, 2021 (the "BCA") to sell Ortho to Quidel. Under the terms of the BCA, Ortho shareholders will receive both of: (i) $7.14 in cash, and (ii) 0.1055 shares of Topco common stock for each share of Ortho common stock they own (the "Merger Consideration"). Upon completion of the merger, current Ortho shareholders are expected to own approximately 38% and current Quidel shareholders are expected to own approximately 62% of the combined company. The Proposed Transaction is valued at approximately $6.0 billion.

3. On January 31, 2022, Topco filed a Form S-4 Registration Statement (the "Registration Statement") with the SEC. The Registration Statement, which recommends that Ortho stockholders vote in favor of the Proposed Transaction, omits or misrepresents material information concerning, among other things: (i) the Company's and Quidel's financial projections; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, J.P. Morgan Securities LLC ("JPM"). Defendants authorized the issuance of the false and misleading Registration Statement in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. In short, unless remedied, Ortho's public stockholders will be irreparably harmed because the Registration Statement's material misrepresentations and omissions prevent them from making a sufficiently informed voting decision on the Proposed Transaction. Plaintiff seeks to enjoin the stockholder vote on the Proposed Transaction unless and until such Exchange Act violations are cured.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(a) and 20(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District under Section 27 of the Exchange Act, 15 U.S.C. § 78aa, as well as under 28 U.S.C. § 1391 because: (i) the Company is headquartered in this District; (ii) one or more of the defendants either resides in or maintains executive offices in this District; and (iii) defendants have received substantial compensation in this District by doing business here and engaging in numerous activities that had an effect in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Ortho.

9. Defendant Ortho is organized under the laws of England and Wales, with its principal executive offices located at 1001 Route 202, Raritan, New Jersey 08869. Ortho is one of the world's largest pure-play in vitro diagnostics ("IVD") companies. Ortho's common stock trades on the Nasdaq Global Select Market under the ticker symbol "OCDX."

10. Defendant Christopher M. Smith ("Smith") is Chairman of the Board and Chief Executive Officer ("CEO") of the Company, and has been a director at all relevant times.

11. Defendant Karen H. Bechtel ("Bechtel") has been a director of the Company at all relevant times.

12. Defendant Evelyn Dilsaver ("Dilsaver") has been a director of the Company at all relevant times.

13. Defendant Allan Holt ("Holt") has been a director of the Company at all relevant times.

14. Defendant Carl Hull ("Hull") has been a director of the Company at all relevant times.

15. Defendant Ron Labrum ("Labrum") has been a director of the Company at all relevant times.

16. Defendant Thomas Mac Mahon ("Mac Mahon") has been a director of the Company at all relevant times.

17. Defendant David Perez ("Perez") has been a director of the Company at all relevant times.

18. Defendant Robert R. Schmidt ("Schmidt") has been a director of the Company at all relevant times.

19. Defendant Stephen H. Wise ("Wise") has been a director of the Company at all relevant times.

20. Defendant Robert Yates ("Yates") has been a director of the Company at all relevant times.

21. Defendants identified in paragraphs 10-20 are referred to herein as the "Board" or the "Individual Defendants."

## OTHER RELEVANT ENTITIES

22. Quidel has a leadership position in the development, manufacturing and marketing of rapid diagnostic testing solutions. These diagnostic testing solutions are separated into four product categories: rapid immunoassay, cardiometabolic immunoassay, molecular diagnostic solutions and specialized diagnostic solutions. Quidel sells products directly to end users and distributors, in each case, for professional use in physician offices, hospitals, clinical laboratories, reference laboratories, urgent care clinics, leading universities, retail clinics, pharmacies and wellness screening centers, as well as for individual, non-professional, over-the-counter ("OTC") use. Quidel markets its products through a network of distributors and a direct sales force. Quidel operates in one business segment that develops, manufactures and markets its products globally.

23. Topco is a Delaware corporation and a wholly owned subsidiary of Ortho.

24. U.S. Holdco Sub is a Delaware corporation and a wholly owned subsidiary of Topco.

25. U.S. Merger Sub is a Delaware corporation and wholly owned subsidiary of Topco.

26. U.S. Holdco Sub 2 is a Delaware corporation and a wholly owned subsidiary of U.S. Holdco Sub.

## SUBSTANTIVE ALLEGATIONS

**Background of the Company**

27. Ortho is a leading global provider of IVD solutions to the clinical laboratory and transfusion medicine communities. Ortho maintains a direct or indirect commercial presence in more than 130 countries and territories, with a direct presence in 36 countries. Ortho's instruments, assays, reagents and other consumables are used in hospitals, laboratories, clinics, blood banks and donor centers worldwide. Ortho is globally operated with manufacturing facilities in the United States and the United Kingdom and with sales centers, administrative offices and warehouses

located throughout the world. The Company's products deliver consistently fast, accurate and reliable results that allow clinicians to make better-informed treatment decisions.

28.     Ortho's business model generates significant recurring revenues and strong cash flow streams, primarily from the ongoing sales of high margin consumables. In fiscal 2021, these recurring revenues contributed approximately 93% of both total and core revenue. Ortho maintains close connectivity with customers through its global presence, with more than 4,800 employees, including approximately 2,300 commercial sales, service and marketing teammates.

29.     Ortho operates two lines of business, Clinical Laboratories and Transfusion Medicine, which together generate core revenue. The Clinical Laboratories line is focused on (i) clinical chemistry, which is the measurement of target chemicals in bodily fluids for the evaluation of health and the clinical management of patients, (ii) immunoassay instruments, which test the measurement of proteins as they act as antigens in the spread of disease, antibodies in the immune response spurred by disease, or markers of proper organ function and health, and (iii) testing to detect and monitor disease progression across a broad spectrum of therapeutic areas, and includes grant revenue related to development of our COVID-19 antibody and antigen tests. The Transfusion Medicine line is focused on (i) immunohematology instruments and tests used for blood typing to ensure patient-donor compatibility in blood transfusions; and (ii) donor screening instruments and tests used for blood and plasma screening for infectious diseases for customers primarily in the United States.

30.     On February 16, 2022, Ortho announced its fourth quarter and fiscal year 2021 financial results. Fourth quarter Core revenue grew 3.5% to $518.9 million versus the prior year quarter, while fiscal year Core revenue grew 16.1% versus the prior year to $2.01 billion. Adjusted free cash flow for the fiscal year was $260.3 million, compared with $40.8 million in the prior year

period. Fiscal year Adjusted EBITDA was $548.1 million, an increase of 20.2% as compared to $456.0 million in the prior year period. Reflecting on the Company's results and looking towards the future, defendant Smith stated:

> "Ortho concluded a consistently strong 2021 reaching such significant milestones as exceeding $2 billion in revenue and 15% constant currency annual growth. In the fourth quarter, we saw this strong growth continue with 8% constant currency core revenue growth, excluding CoV-2 assay sales. This momentum is a direct result of our commercial execution within the Clinical Laboratories and Transfusion Medicine businesses as well as across all major geographic regions, demonstrating the strength and stability of our recurring revenue business model.
>
> As previously announced, we are excited about the definitive agreement with Quidel Corporation. We believe shareholder value will be enhanced by the combination of Quidel and Ortho to establish a diagnostics company with an expanded global presence and robust product offering serving a wide range of customers. We believe the companies' highly complementary, world-class product and service offerings will provide opportunities to capture significant growth globally through Ortho's commercial footprint of approximately 2,300 teammates, while enhancing cross-selling opportunities across a diversified customer and channel mix."

**The Proposed Transaction**

31. On December 23, 2021, Ortho and Quidel issued a joint press release announcing the Proposed Transaction. The press release states, in relevant part:

> SAN DIEGO & RARITAN, N.J.--Quidel Corporation (NASDAQ: QDEL) ("Quidel") and Ortho Clinical Diagnostics Holdings plc (NASDAQ: OCDX) ("Ortho") today announced that they have entered into a definitive agreement in which Quidel will acquire Ortho, one of the world's largest in vitro diagnostics companies, for $24.68 per share of common stock using a combination of cash and newly issued shares in the combined company, representing a 25% premium over Ortho's closing price on December 22, 2021 and an equity value of approximately $6.0 billion. The transaction is expected to close during the first half of fiscal year 2022, subject to customary closing conditions.
>
> "The combination with Ortho will help solidify Quidel as a leader in the diagnostics industry, bringing together innovative, complementary products, solutions, and services that enhance the health and well-being of patients across the globe," said Douglas Bryant, President and Chief Executive Officer of Quidel, who will serve as Chairman and Chief Executive Officer of the combined company. "Establishing a stronger leadership position, we expect the combined company will emerge as a global player with top-tier R&D capabilities, a more diverse product pipeline, and

broader geographic footprint.  Importantly, our complementary cultures are underpinned by a commitment to our customers, patients, and the communities we serve, reinforcing our confidence in the long-term value creation of this transaction.  We are impressed by what Ortho has accomplished for patients.  We look forward to joining together to continue the strong patient focus that is core to our mission, creating an organization with a shared goal of discovering, developing, and delivering innovative solutions to our customers."

"Quidel shares our commitment to customers and passion for the patients we serve.  By bringing together Quidel's point-of-care diagnostics with Ortho's vast global reach, there is a substantial opportunity to capitalize on the cross-selling opportunities, move into attractive adjacent markets, and accelerate innovative product expansion and the development of molecular technologies," said Chris Smith, Chairman and Chief Executive Officer of Ortho.  "Together, we will continue to advance life-changing diagnostic solutions to improve patient outcomes and deliver economic benefits to the healthcare system."

The combined organization will unite world-class technologies and platforms to benefit customers with expanded access to clinical chemistry, immunoassay, molecular diagnostics, immunohematology, donor screening, and point-of-care diagnostics offerings.  Further, the combined company will be poised to meet patient testing needs at all points of the care continuum – reference labs, hospitals, physicians' offices, urgent care centers and at-home / retail locations.  With complementary areas of focus, the combined company will also operate with global reach and scale, maintaining the speed and agility that is fundamental to enhance Quidel's current strategic approach.

**Transaction Benefits**

- **Balanced and diversified product portfolio across diagnostic instruments and assays**.  The companies' highly complementary, world-class product and service offerings provide opportunities to capture significant growth globally while enhancing cross-selling opportunities across a diversified customer and channel mix.  The transaction provides Quidel with ample whitespace opportunity to capture demand in emerging markets through telehealth technology and digital health capabilities, utilizing Ortho's strong customer relationships and providing greater patient access to point-of-care diagnostic products.

- **Highly synergistic opportunities create significant shareholder value creation**.  The transaction is expected to generate substantial synergies on both the top- and bottom-line.  Quidel anticipates that the combined company will realize approximately $90 million of run-rate cost-related synergies, excluding one-time costs, by the end of year three, driven primarily from operational efficiencies, supply chain optimization, and shared administrative functions, including public company costs.  In

addition, given Ortho's enhanced global commercial reach and expansive product portfolio, Quidel expects to drive strong cross-selling revenue synergies in excess of $100 million by 2025 and meaningful adjusted EBITDA benefits.

- **Complementary cultures with a commitment to providing world-class products and services**.  Both Quidel and Ortho have talented and experienced employees who share a commitment to customers, patients, and the communities the companies serve.  This combination is expected to benefit patients, customers, and suppliers, and provide greater opportunities for the approximately 6,000 employees of both companies.

- **Robust, more diverse product pipeline and enhanced R&D capabilities**.  The transaction is expected to accelerate an innovative pipeline and milestone execution through complementary capabilities and product development synergies.  The combined product portfolio, supported by an established global commercial infrastructure and distribution footprint, positions Quidel to capitalize on strong secular growth drivers.

- **Strong balance sheet with significant cash generation**.  After accounting for financing of the transaction, the combined company has a pro forma net debt-to-adjusted EBITDA of less than two-times as of TTM third quarter 2021.  Expected strong operating cash flow and margin enhancement opportunities will enable Quidel to pursue organic and inorganic growth.

**Transaction Details**

Under the terms of the agreement, which was unanimously approved by the Board of Directors of each company, Quidel will acquire Ortho for $24.68 per share of common stock, for a total consideration of approximately $6.0 billion, including $1.75 billion of cash, funded through cash on the balance sheet and incremental borrowings.  The combined company will also acquire Ortho's existing net debt of $2.0 billion.

Ortho shareholders will receive $7.14 in cash per common share and 0.1055 shares of common stock in the combined company for each Ortho common share, with Ortho shareholders expected to own approximately 38% of the combined company. This represents an implied premium of 25% when compared to Ortho's unaffected closing stock price on December 22, 2021.

Following the close of the transaction, the combined company's Board of Directors will consist of 12 members, eight (8) designated by Quidel and four (4) designated by Ortho.  Quidel's current President and Chief Executive Officer, Douglas Bryant, will serve as Chairman and Chief Executive Officer of the combined company. Joseph M. Busky will be the Chief Financial Officer, Robert Bujarski will be

President and Chief Operating Officer, and Michael Iskra will be Chief Commercial Officer.

The transaction, which is subject to approval by both companies' shareholders as well as customary closing conditions and regulatory approvals, is expected to close in the first half of 2022.

**Advisors**

Quidel's financial advisors in connection with this acquisition are Perella Weinberg Partners LP and Citi, and its legal advisor is Gibson, Dunn & Crutcher LLP.

Ortho's exclusive financial advisor is J.P. Morgan Securities LLC, and its legal advisor is Latham & Watkins LLP.

**Insiders' Interests in the Proposed Transaction**

32. Ortho insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders. The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Ortho.

33. Notably, certain Company insiders have secured positions for themselves with the combined company. For example, Ortho executive officers Joseph Busky ("Busky") and Michael Iskra ("Iskra") will serve as the Chief Financial Officer ("CFO") and Chief Commercial Officer of Topco, respectively, after closing of the merger, and four members of the post-closing board of directors of Topco will be appointed by Ortho.

34. Company insiders also stand to reap substantial financial benefits for securing the deal with Quidel. Under the terms of the Merger Agreement, upon a qualifying termination in connection with the Proposed Transaction, all Company options, restricted stock units, and restricted stock held by Company insiders will vest and convert into the right to receive the Merger Consideration. The following tables set forth the value of equity awards held by Company executive officers and directors:

| Executive Officers | Ortho Options (Vested) (#) | Ortho Options (Vested) ($) | Ortho Options (Unvested) (#) | Ortho Options (Unvested) ($) | Ortho Restricted Stock and Restricted Stock Units (Unvested) (#) | Ortho Restricted Stock and Restricted Stock Units (Unvested) ($) |
|---|---|---|---|---|---|---|
| Christopher Smith | 590,473 | $4,859,593 | 1,380,947 | $11,365,194 | 358,515 | $7,453,527 |
| Joseph Busky | 66,392 | $546,406 | 331,958 | $2,732,014 | — | — |
| Michael Iskra | 301,683 | $3,793,707 | 225,732 | $1,857,774 | 150,000 | $3,118,500 |
| Chockalingam Palaniappan, Ph.D. | 53,113 | $437,120 | 265,567 | $2,185,616 | — | — |
| Michael A. Schlesinger | 186,303 | $2,086,184 | 212,453 | $1,748,488 | — | — |

| Non-Employee Directors | Ortho Options (Vested) (#) | Ortho Options (Vested) ($) | Ortho Options (Unvested) (#) | Ortho Options (Unvested) ($) | Ortho Restricted Stock and Restricted Stock Units (Unvested) (#) | Ortho Restricted Stock and Restricted Stock Units (Unvested) ($) |
|---|---|---|---|---|---|---|
| Karen Bechtel | — | — | — | — | 3,250 | $67,568 |
| Evelyn Dilsaver | — | — | — | — | 3,250 | $67,568 |
| Allan Holt | — | — | — | — | — | — |
| Robert Yates | 1,025,225 | $14,876,015 | — | — | 3,250 | $67,568 |
| Thomas Mac Mahon | — | — | — | — | 3,866 | $80,374 |
| Ronald Labrum | — | — | — | — | 3,866 | $80,374 |
| David Perez | — | — | — | — | 3,866 | $80,374 |
| Carl Hull | — | — | — | — | 3,866 | $80,374 |

35. Moreover, in connection with the merger, Ortho approved the grant of retention bonuses to certain employees and executive officers (the "Retention Bonuses"). Retention Bonuses in the following amounts for the executive officers are: Busky: $384,375; Iskra: $375,000; Dr. Chockalingam Palianiappan: $461,250; and Mr. Michael Schlesinger: $421,563.

36. Further, in connection with the merger, Ortho approved the grant of transaction bonuses to certain employees and executive officers (the "Transaction Bonuses"). Transaction Bonuses in the following amounts for the executive officers are: defendant Smith: $937,500; Busky: $384,375; Iskra: $375,000; and Mr. Schlesinger: $421,563.

37. Additionally, if they are terminated in connection with the Proposed Transaction, Ortho's named executive officers stand to receive substantial severance payments in the form of golden parachute compensation, as set forth in the following table:

| Name | Cash ($)(1) | Equity($)(2) | Perquisites/ Benefits ($) (3) | Other (4) | Total($) |
|---|---|---|---|---|---|
| **Christopher Smith** | 2,500,000 | 18,818,721 | 28,503 | 937,500 | 22,284,724 |
| Chair and Chief Executive Officer | | | | | |
| **Joseph Busky** | 256,250 | 2,732,014 | 12,480 | 768,750 | 3,757,014 |
| Chief Financial Officer | | | | | |
| **Michael Iskra** | 412,500 | 4,976,274 | 13,529 | 750,000 | 5,726,274 |
| Executive Vice President, Strategy & Commercial Excellence | | | | | |
| **Chockalingam Palaniappan, Ph.D.** | 461,250 | 1,748,488 | 7,888 | 461,250 | 2,687,876 |
| Chief Innovation Officer | | | | | |
| **Michael A. Schlesinger** | 1,053,908 | 1,748,488 | 23,402 | 843,126 | 3,668,924 |
| Executive Vice President, General Counsel & Secretary | | | | | |

**The Registration Statement Contains Material Misstatements or Omissions**

38. Defendants filed a materially incomplete and misleading Registration Statement with the SEC and disseminated it to Ortho's stockholders. The Registration Statement misrepresents or omits material information that is necessary for the Company's stockholders to make an informed decision whether to vote in favor of the Proposed Transaction.

39. Specifically, as set forth below, the Registration Statement fails to provide Company stockholders with material information or provides them with materially misleading information concerning: (i) the Company's and Quidel's financial projections; and (ii) the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor JPM.

*Material Omissions Concerning Ortho's and Quidel's Financial Projections*

40. The Registration Statement omits material information regarding the Company's and Quidel's financial projections.

41. For example, with respect to the "*Ortho Management Projections for Ortho*" the registration Statement fails to disclose: (i) Ortho's net operating losses; (ii) Ortho Synergies Estimates; and (iii) the line items underlying (a) Adjusted EBITDA and (b) Unlevered Free Cash Flow.

42. With respect to the "*Ortho Management Projections for Quidel*" the Registration Statement fails to disclose the line items underlying (a) Adjusted EBITDA and (b) Unlevered Free Cash Flow.

43. The omission of this information renders the statements in the "Ortho Unaudited Forward-Looking Financial Information" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act

***Material Omissions Concerning JPM's Financial Analyses***

44. The Registration Statement describes JPM's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of JPM's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Ortho's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on JPM's fairness opinion in determining whether to vote in favor of the Proposed Transaction.

45. With respect to JPM's *Public Trading Multiples* analysis, the Registration Statement fails to disclose the reason that the FV/2022E Adj. EBITDA multiples for 10X Genomics, Inc. and NanoString Technologies Inc. were deemed to be not meaningful.

46. With respect to JPM's *Discounted Cash Flow Analysis*, the Registration Statement fails to disclose: (i) quantification of the inputs and assumptions underlying the discount rates ranging from 6.5% to 7.5% for Ortho and 7.5% to 8.5% for Quidel; (ii) quantification of the estimated terminal values for Ortho and Quidel; (iii) quantification of Ortho and Quidel's net debt as of December 31, 2021; and (iv) quantification of the value of Ortho's net operating losses.

47. Without such undisclosed information, Ortho stockholders cannot evaluate for themselves whether the financial analyses performed by JPM were based on reliable inputs and assumptions or whether they were prepared with an eye toward ensuring that a positive fairness

opinion could be rendered in connection with the Proposed Transaction. In other words, full disclosure of the omissions identified above is required to ensure that stockholders can fully evaluate the extent to which JPM's opinion and analyses should factor into their decision whether to vote in favor of or against the Proposed Transaction.

48. The omission of this information renders the statements in the "Opinion of J.P. Morgan Securities LLC as Financial Advisor to Ortho" section of the Registration Statement false and/or materially misleading in contravention of the Exchange Act.

49. The Individual Defendants were aware of their duty to disclose this information and acted negligently (if not deliberately) in failing to include this information in the Registration Statement. Absent disclosure of the foregoing material information prior to the stockholder vote on the Proposed Transaction, Plaintiff and Ortho's public stockholders will be unable to make a sufficiently informed decision whether to vote in favor of the Proposed Transaction and are thus threatened with irreparable harm warranting the injunctive relief sought herein.

## CLAIMS FOR RELIEF

### COUNT I

**Claims Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder**

50. Plaintiff repeats all previous allegations as if set forth in full.

51. During the relevant period, defendants disseminated the false and misleading Registration Statement specified above, which failed to disclose material facts necessary to make the statements, in light of the circumstances under which they were made, not misleading in violation of Section 14(a) of the Exchange Act and SEC Rule 14a-9 promulgated thereunder.

52. By virtue of their positions within the Company, the defendants were aware of this information and of their duty to disclose this information in the Registration Statement. The

Registration Statement was prepared, reviewed, and/or disseminated by the defendants. It misrepresented and/or omitted material facts, including material information about the Company's, Quidel's and Topco's financial projections and the financial analyses performed by the Company's financial advisor JPM. The defendants were at least negligent in filing the Registration Statement with these materially false and misleading statements.

53. The omissions and false and misleading statements in the Registration Statement are material in that a reasonable stockholder would consider them important in deciding how to vote on the Proposed Transaction.

54. By reason of the foregoing, the defendants have violated Section 14(a) of the Exchange Act and SEC Rule 14a-9(a) promulgated thereunder.

55. Because of the false and misleading statements in the Registration Statement, Plaintiff is threatened with irreparable harm, rendering money damages inadequate. Therefore, injunctive relief is appropriate to ensure defendants' misconduct is corrected.

## COUNT II

### Claims Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act

56. Plaintiff repeats all previous allegations as if set forth in full.

57. The Individual Defendants acted as controlling persons of Ortho within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of Ortho, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

58. Each of the Individual Defendants was provided with or had unlimited access to copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

59. Each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the transactions giving rise to the securities violations as alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of the Registration Statement.

60. In addition, as the Registration Statement sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The Registration Statement purports to describe the various issues and information that they reviewed and considered—descriptions the Company directors had input into.

61. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

62. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and SEC Rule 14a-9, promulgated thereunder, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of defendants' conduct, Ortho's stockholders will be irreparably harmed.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Ortho, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction and any vote on the Proposed Transaction, unless and until defendants disclose and disseminate the material information identified above to Ortho stockholders;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Declaring that defendants violated Sections 14(a) and/or 20(a) of the Exchange Act, as well as SEC Rule 14a-9 promulgated thereunder;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury.

|  |  |
|---|---|
| Dated:  March 21, 2022 | **WEISSLAW LLP** |
| | By  */s/ Mark D. Smilow* |

        Mark. D. Smilow
        305 Broadway, 7th Floor
        New York, NY 10007
        Tel: (212) 682-3025
        Fax: (212) 682-3010
        Email: msmilow@weisslawllp.com

        and

        Michael A. Rogovin (to be admitted *pro hac vice*)
        476 Hardendorf Ave. NE
        Atlanta, GA 30307
        Tel: 404-692-7910
        Fax: (212) 682-3010
        Email: mrogovin@weisslawllp.com

        *Attorneys for Plaintiff*